Clarence Duke McGANN

v.

UNITED STATES of America.

Clarence Duke McGANN

v.

UNITED STATES MARSHAL, DISTRICT OF MARYLAND.

Civ. Nos. 15245, 15626.

United States District Court
District of Maryland.

Sept. 1, 1964.

---

See also D.C., 202 F.Supp. 945.

Lowell R. Bowen, court-appointed, Baltimore, Md., for petitioner.

Thomas J. Kenney, U. S. Atty., and Ronald T. Osborn, Asst. U. S. Atty., Baltimore, Md., for respondents.

THOMSEN, Chief Judge.

### The § 2255 Petition

This is the ninth petition for relief under 28 U.S.C.A. § 2255 filed in this Court by petitioner Clarence Duke McGann.

In August 1954 the Grand Jury for the District of Maryland filed three indictments against McGann and two codefendants, Foster and Smith: No. 23017, a four count indictment, charging robbery of a national bank, located at the Andrews Air Force Base, in violation of 18 U.S.C.A. § 2113; No. 23024, a one count indictment, based on the same incident, charging robbery on lands within the territorial jurisdiction of the United States in violation of 18 U.S. C.A. § 2111; and No. 23023, a three count indictment, of which two counts charged violations of the Dyer Act, 18 U.S.C.A. § 2312, and the third, receiving and concealing a stolen automobile in violation of 18 U.S.C.A. § 662.

Represented by two lawyers whose competency has never been questioned, McGann pleaded guilty to all of the charges against him, and after a prolonged hearing, in which McGann participated, Judge Chesnut sentenced him to a term of twenty years in the bank robbery case, No. 23017, and to concurrent terms of five years in each of the other cases.

Shortly thereafter, in the Southern District of New York, McGann entered a plea of guilty to a charge of robbing a bank in New York City and was sentenced by that Court to a term of twenty years to run concurrently with the Maryland sentence.

His first three petitions for relief filed in the District of Maryland were discussed in McGann v. United States, 4 Cir., 249 F.2d 431 (1957), McGann v. United States, 4 Cir., 261 F.2d 956 (1958), and United States v. McGann, D.Md., 161 F.Supp. 629 (1958). Later petitions reiterated the double jeopardy arguments made in the early petitions and added additional grounds, including failure of the Court to order a presentence report (which the evidence shows was deliberately not requested by McGann and his counsel) and failure of the Court to afford a right of allocution (which was simply untrue). McGann is an assiduous student of the Federal reports. It is too bad that his respect for the truth does not match his diligence.

The present petition alleges: "1. The Petitioner did not knowingly and voluntarily enter a plea of guilty to the indictment. 2. The Government made statements prior to the sentencing which they knew, or by the exercise of reasonable care should have known, were false, misleading and prejudicial to the Petitioner. 3. The Court failed to require a presentence investigation."

A competent attorney was appointed to represent McGann in connection with the present petition, and this Court ordered that he be brought to Maryland from the United States Penitentiary at Marion, Illinois, where he is now confined, for the hearing on his petition.

■ (1) The evidence satisfies this Court that when McGann authorized his counsel to enter the pleas on his behalf he did so voluntarily and with a full understanding of the nature of the charges and of the possible penalties which might be imposed. The testimony of McGann to the contrary is not worthy of belief. The evidence shows an unusually thorough examination and investigation of all possible defenses by his Court-appointed counsel, one of whom, John Martin Jones, Jr., had just completed a year's service as Judge Chesnut's law clerk, and the other, James B. Murphy, had had wide experience in criminal cases in this Court and in the State Courts. The attorneys discussed the case on several occasions with McGann, and particularly discussed the refusal of the government to dismiss any of the charges, the multiple offender and other problems arising out of the several indictments, the maximum penalties, the probable sentences which Judge Chesnut would impose, and the best strategy to secure as short a sentence as possible. McGann, who is quite intelligent, understood and acquiesced in the strategy adopted. Its wisdom is attested by the fact that McGann received a shorter sentence than his codefendants.

It is true that Judge Chesnut did not himself inquire whether the pleas were voluntarily entered with knowledge of the charges and possible penalties. At that time, 1954, it was his practice to rely on competent counsel to see that pleas were made voluntarily and understandingly where such counsel had been in the case for more than a short time, otherwise to ask the questions himself. Since that time the Fourth Circuit and other Courts have emphasized the importance of the judge asking the questions himself. See e. g., Gundlach v. United States, 4 Cir., 262 F.2d 72 (1958); Aiken v. United States, 4 Cir., 296 F. 2d 604 (1961). In both of those cases, however, the Fourth Circuit found that the failure of the judge to ask the questions himself did not automatically render the proceedings unconstitutional; but, as Chief Judge Sobeloff said in Aiken, "where such a hearing establishes beyond doubt the understanding and the voluntariness of the plea and waiver of counsel, the judgment of the court will not be set aside". 296 F.2d at 608. "The defendant who seeks relief under § 2255 must still bear the burden of showing that he did not understand his constitutional rights." Starks v. United States, 4 Cir., 264 F.2d 797, 799 (1959), quoted with approval in Aiken, 296 F.2d 604. See also United States v. Davis, 7 Cir., 212 F.2d 264, 267 (1954), United States v. Swaggerty, 7 Cir., 218 F.2d 875 (1955), both cited by the Fourth Circuit in Gund-

lach, and Tihbett v. Hand, 10 Cir., 294 F.2d 68, 73 (1961).

(2) and (3). The hearing in connection with the sentencing lasted for several hours. Dr. Philip F. Lerner, a psychiatrist called on behalf of McGann, testified that in his opinion McGann would not do physical harm to anyone. United States Attorney Doub then read to Dr. Lerner from an FBI report which stated:

"The FBI Newark has obtained information from Captain Charles McGinnis, Chief of Detectives, Belleville, New Jersey, that his department records reflect that officers answered a complaint of a disturbance at 124 Cortlandt Street, subject McGANN, ELESE RAMKINS McGANN, his alleged wife, and EDNA, her sister. McGANN reportedly had pointed a .32 caliber automatic at EDNA, claiming she was interfering with his family life. The officers took the gun, a black handled automatic, make unknown, Serial #1235, with a loaded clip, plus one cartridge from subject McGANN, who claimed he obtained this gun in a crap game in New York City. This gun is currently in the possession of the FBI in New York.

"When FBI New York interviewed ELESE RAMKINS on August 14, 1954, she said CLARENCE McGANN had two small caliber pistols in March, 1954, which she had not seen since that time."

Mr. Doub then asked the doctor "If those statements were correct, do you still feel that Mr. McGann is a quite passive sort of person who would not do any injury, or harm to anyone?" The doctor replied: "He may have threatened somebody, but I doubt whether he would have carried out his threats." McGann thereafter made a statement to the Court, in the course of which he said: " * * *

in reference to what Mr. Doub has said about my previous record—I only go as far as what he had mentioned—it's somewhat distorted as far as me having, possessing a pistol of my own and stating that I would shoot someone. I have never done it, I have never intended to do it, or will do it."

At the hearing on the present application, counsel for McGann offered in evidence: (1) a letter to McGann dated June 29, 1956, from the Department of Public Safety, Detective Bureau, Belleville, New Jersey, stating: "Re: your letter dated June 26th 1956, no records are kept of any interview, the only time that any records are kept on file is when a complaint has been signed." and (2) a letter from Mrs. Edna Wright stating: "I did not no (sic) you had a gun until someone told me the next day."

McGann contends that Judge Chesnut may have considered the report made to the FBI to have been true, and that he should have requested a presentence report. The evidence at the present hearing, however, shows that the question to Dr. Lerner was a minor incident in a long hearing, and that it was not mentioned by Judge Chesnut, who inquired diligently into other, more important features of the case. Moreover, McGann and his attorneys deliberately decided for strategical reasons not to request a presentence report. As noted above, the wisdom of that strategy is attested by the fact that McGann received a shorter sentence than his co-defendants.[1]

*Habeas Corpus*

As soon as he came into the courtroom for his hearing on the § 2255 application, McGann presented to the Court a petition for a writ of habeas corpus directed to the Marshal of this District, questioning not only the conviction of bank robbery in the District of Maryland but also the conviction of bank robbery

[1]. The effect of this point could only be to require a resentencing, not to strike out the pleas of guilty. McGann, however, has stated that even if the pleas are not stricken he wishes to be resentenced, although he has been advised by his counsel that he runs some risk of a longer sentence in making this request.

in the Southern District of New York. With respect to the Maryland conviction, he raises the same points that he raised on the pending § 2255 application. With respect to the New York convictions, he raises a host of points, some of which have heretofore been presented to the Southern District of New York in eight habeas corpus, § 2255 and coram nobis petitions, some of which apparently have not been so presented. Some of the points raised in New York are discussed in United States v. McGann, 2 Cir., 245 F.2d 670 (1957). See also McGann v. United States, 362 U.S. 214, 80 S.Ct. 629, 4 L.Ed.2d 666. Habeas corpus relief was denied in the District of Kansas and the Tenth Circuit while McGann was at Leavenworth. See McGann v. Taylor, 10 Cir., 289 F.2d 820 (1961).

This Court has no jurisdiction to issue a writ of habeas corpus in this case, since McGann's place of confinement is in the Eastern District of Illinois, and he has been brought into the District of Maryland only to be present and to testify at the hearing on his § 2255 petition. U. S. ex rel. Quinn v. Hunter, 7 Cir., 162 F.2d 644 (1947); Sanders v. Brady, D.Md., 57 F.Supp. 87 (1944).

Moreover, with respect to the Maryland conviction, this Court has just found in the § 2255 proceeding that McGann is entitled to no relief. With respect to the New York conviction, habeas corpus in this district is not an appropriate means to review or to by-pass proceedings under 28 U.S.C.A. § 2255 in the District in which the prisoner was convicted. Habeas corpus is available only when a petitioner is entitled to immediate release. McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934); Parker v. Ellis, 362 U.S. 574, 80 S.Ct. 909, 4 L.Ed.2d 963 (1960); McGann v. Taylor, 10 Cir., 289 F.2d 820 (1961).

The petition for a writ of habeas corpus, as well as the petition under 28 U.S.C.A. § 2255, must be denied. Appropriate orders will be entered.